**UNITED STATES v. LE PAGE.**
**No. 2691.**

Circuit Court of Appeals, First Circuit.
May 31, 1932.

**166**

William J. Hession, Regional Atty., Veterans' Administration, of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and John Laurence Hurley, Sp. Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

James A. Donovan, of Lawrence, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decision of the District Court of Massachusetts and involves the right of the petitioner and appellee to recover under a policy of war risk insurance for which she applied with the consent of the insured, who was her son, and who died in France in June, 1918, from wounds received in action. The appellee was named as the beneficiary in the application for the policy.

Oswald Erick Opitz, the deceased, enlisted in the United States Army on July 22, 1917. By the provisions of the Act of October 6, 1917 (40 Stat. 398), the time limit on applications for war risk insurance by the men in active service on the latter date was February 12, 1918. Some time prior to February 12, 1918, the soldier wrote to his mother that, owing to the fact that he had allotted to her out of his pay the sum of $15 per month, and had also subscribed for Liberty bonds, he was unable to pay for any war risk insurance, but, if the appellant felt that she could pay the premiums out of her allotment, she might do so.

Upon inquiry of the Bureau of War Risk Insurance, the appellee was informed that under the Act of October 6, 1917, her son had until February 12, 1918, to make application for insurance. On February 11, 1918, the appellee filled out a blank furnished by the Bureau of War Risk Insurance in cases where application was made by a party other than the insured.

The application by a third party, if authorized or ratified by the insured, seems to have been recognized by the Bureau as a compliance with the statute. That the soldier approved of the mother's act in making the application is clearly indicated in his letters to her, provided that she could pay the premiums out of her allotment, which she was willing to do. Evidently she wrote to him of her action in filling the application on February 12, as he, during a rest period between March 13 and March 17, replied that he would approve the application as soon as received. While he received word from the appellee prior to March 13, 1918, that the application had been filed, he received no communication from the government until April 23, 1918.

From March 29 to April 22 he was evidently at the front, but upon receipt of the application blank on April 23, he immediately approved it, naming the appellee as beneficiary, and returned it through the military channels to the War Risk Insurance Bureau at Washington.

On February 12, 1918, the time for making application by those in active service, and whose time for making application for war risk insurance would expire before April 12, 1918, was by congressional resolve extended to April 12, 1918.

When the application of the appellee ratified by the soldier was received by the War Risk Insurance Bureau some time in May, 1918, the deputy commissioner of insurance

notified the appellee on May 23 that, inasmuch as the time for her son to make application for insurance expired on April 12, 1918, his ratification on April 23 was of no effect.

The issue raised here is whether or not the ratification by the son of the mother's application in his behalf on February 12, 1918, made as soon as the government forwarded the application to him for his approval, was effective as of February 12, though made after the date when he could file a new application, but in accordance with his intent previously expressed before April 12, 1918, and the government was bound to issue a policy on his life payable to the appellee as beneficiary.

The rule is general that the ratification by the principal of the act of an unauthorized agent, unless the rights of third parties have intervened, is retroactive and renders effective the agent's act from its inception. 21 R. C. L. 919, § 99. The government, however, invokes here the doctrine that a principal cannot ratify the acts of an agent at a time when he could not act himself, even though the agent, though unauthorized, acted for the principal at a time when the principal could have acted, citing Cook v. Tullis, 18 Wall. 332, 338, 21 L. Ed. 933. This may be true in the ordinary case of principal and agent, but we think the parties here stand on a somewhat different footing, if, indeed, the time limit for filing a new application was intended by Congress to place also a time limit on a ratification by a soldier at the front of an application duly filed for him by a permitted beneficiary. The government extended to those in the service during the World War every possible benefit and encouragement to protect themselves and their families against want in case of their death or disability while in the service. The several acts passed for this purpose should be construed liberally in favor of the man in the service and his dependents. The government should not stand on narrow technicalities where the good faith of the parties is unquestioned. United States v. Cox (C. C. A.) 24 F.(2d) 944.

The application here was made by the mother with full knowledge and consent of the soldier and within the time limit. The appellee, probably through ignorance, did not forward to the Bureau the letters received from her son indicating his consent to her applying for his war risk insurance. Her application, subject to her son's ratification, was, in accordance with the instructions of the Bureau, forwarded by her to the Bureau, which then undertook to obtain the ratification of the insured; and notwithstanding the appellee had sufficient time to communicate with her son after filing the application and received word back from him dated March 13, 1918, and long before the time limit for the filing of a new application had expired, yet the government did not present to him the application for his approval until April 23, 1918, eleven days after he could file a new application.

In such cases Congress must have contemplated that some time might elapse before communication could be established with a soldier at the front, and where no fault on his part or of the beneficiary appears, if ratified within a reasonable time after the application was filed by the beneficiary, it should be held sufficient.

The ratification by the soldier in this case was not a new application on April 23, 1918, but a ratification of an application made by the mother in his behalf on February 12, which was within the time limit fixed by Congress. The resolve of Congress approved February 12, 1918, extending the time for making new applications, should not be construed to prevent the ratification by a soldier in active service of a prior application in his behalf by a permitted beneficiary, if the ratification is within a reasonable time after the application was filed with the Bureau of War Risk Insurance. The approval of the soldier on April 23, being under the circumstances within a reasonable time after the application was filed, the application in this case should be treated as made as of the date of signing, or as of February 12, 1918.

Nor does it follow that the rule—that a principal, after the date when he cannot perform the act himself, cannot ratify an agent's unauthorized act—should be applied to the ratification of war risk insurance applications made by a beneficiary, especially when it appears that the soldier has previously expressed his assent to the beneficiary making application, and the only reason that it was not ratified earlier was because of the government's delay in presenting the application for his approval.

That no premiums were paid on this policy was not the fault of the insured or the beneficiary. It is admitted that the government at all times had in its possession, from the time the policy should have been held to be in effect up to the date of the insured's death, not only money due the insured, but

money due the beneficiary under her allotment, and sufficient to pay the premiums due on the policy. O'Neill v. United States (D. C.) 32 F.(2d) 313.

The judgment of the District Court is affirmed.